OLE MARTINSON v. NORTHERN PACIFIC RAILWAY COMPANY.[1]

April 30, 1909.

Nos. 16,186—(42).

**Contributory Negligence.**

Appellant was riding on the pilot of the engine of a work train, and when the train came to a stop in the railway yards he jumped off, and was struck by an engine passing upon an adjoining track.   *Held*, it conclusively appears from the evidence that he was guilty of contributory negligence.

[1] Reported in 120 N. W. 1086.

Action in the district court for Clay county to recover $1,050 for personal injuries sustained while in defendant's employ. The case was tried before Taylor, J., and a jury which returned a verdict in favor of plaintiff for $350. From an order granting defendant's motion for judgment notwithstanding the verdict, plaintiff appealed. Affirmed.

*F. H. Peterson,* for appellant.

*Charles W. Bunn* and *Emerson Hadley,* for respondent.

LEWIS, J.

Respondent railway company was engaged in operating a steam shovel at a point about three miles west of the village of Audubon. The work train, consisting of an engine, water car, coal car, and a caboose, carried the employees to and from Audubon, and it was their practice to jump on any of the cars, or the engine pilot, and on the occasion in question appellant and his brother got on the pilot of the engine; appellant sitting almost in the center and his brother to his left. Counting from the south, there were four tracks at Audubon; the first one being the elevator spur, the second the east-bound main line, the third the west-bound main line, and the fourth the passing track, which ran north of the depots. At the point of the accident the distance between the main tracks, center to center, was about thirteen feet, leaving a little over eight feet between the rails of the two main tracks. A man could stand between trains passing at moderate speed on the two main lines; but such position would be attended with danger when the trains were going fast. When the work train reached Audubon, on the north main track, on the evening of June 21, 1907, appellant stepped off the engine pilot, turned south, and was immediately struck by some portion of the engine of a wrecking train then passing to the east on the south main track. The company was charged with negligence in running the wrecking train at too rapid a speed and in failing to give the usual signals. Plaintiff recovered a verdict, and the trial court granted a motion for judgment for defendant notwithstanding the verdict, upon the ground that it conclusively appeared from the evidence that plaintiff was guilty of contributory negligence.

For the purposes of this appeal, that view of the evidence most favorable to appellant must be accepted. Appellant was sitting near

the center of the engine pilot when the train came to a stop in the yard at Audubon. Before stepping off he glanced back over his right shoulder to see if any train was approaching from the west on the adjoining track. He claimed that, after looking east and west he stepped off, and in so doing acquired a momentum which carried him far enough to come in contact with the engine of the wrecking train, which appeared at that moment from the west, and which he did not see in time to avoid. The passing track on the north side was at least twenty feet away, and there was no substantial reason why appellant could not have stepped off on that side. His brother, who was sitting to the left, did so. True, appellant's destination was to the south of the yard, and it might have been a little more inconvenient for him to get off on the north side and pass around the tank car ahead, or to the rear of the train; but this did not justify him in hastily jumping off on the side nearest his home, without examination of the track he was about to cross. While he and the other workmen were expected to ride back and forth on the work train, the company did not assume to place them on any particular part of the train. There was plenty of room on the platforms of the caboose, the coal car, and the flat car which carried the water tank. Appellant voluntarily took a position on the front end of the engine, where his view to the rear was almost wholly cut off by the boiler of the engine, which loomed up behind him. He was not under orders from any one, there was no emergency, and his movements were entirely under his own control. That he looked back and saw the track was clear, in so far as his view was unobstructed by the engine boiler, indicates very clearly that he appreciated the possibility of a train coming from the direction, but took the chance of a hasty jump without proper investigation.

Affirmed.